OPINION
{¶ 1} This appeal is taken from a final judgment of the Trumbull County Court of Common Pleas. Appellant, Steven Henderson, appeals from his conviction on one count of rape. For the reasons that follow, we reverse appellant's conviction and remand the matter to the trial court for further proceedings consistent with this opinion.
 {¶ 2} In July 1998, the Trumbull County Grand Jury indicted appellant on one count of rape, in violation of R.C. 2907.02. The indictment alleged that sometime in January or February 1997, appellant used force or the threat of force in the rape of a child under the age of thirteen. The case proceeded to a jury trial in December 1998, at the conclusion of which the jury returned a guilty verdict. On appeal, this court reversed appellant's conviction and remanded the matter for a new trial. State v. Henderson (Sept. 29, 2000), 11th Dist. No. 99-T-0001, 2000 WL 1459858.
 {¶ 3} Appellant's second trial began on March 19, 2001. During the proceedings, the state presented testimony from the victim and ten other witnesses. The victim, who was eleven-years-old at the time of the alleged assault, testified that sometime in early 1997, her mother, Valerie Copeland ("Copeland"), left her and her little brother with appellant so she could go to the store. While Copeland was gone, the victim claimed that appellant ordered her and her little brother into a bedroom where he then instructed the victim to "pull down [her] pants and lay on the bed[.]" The victim told the jury that after doing so appellant got on top of her, put "his penis inside of [her] private[,]" and left. However, the victim testified that just before leaving, appellant threatened that if she told anyone about what had happened, he would kill her and her family.
 {¶ 4} After four days of testimony, the jury found appellant guilty as charged. The trial court then sentenced appellant to a term of life in prison. From this decision, appellant filed a timely notice of appeal with this court. He now submits five assignments of error for our consideration:
 {¶ 5} "[1.] The Appellant was denied due process and a fair trial when the trial court improperly refused to admit Defense Exhibit K[.]
 {¶ 6} "[2.] The trial court erred to the prejudice of the Appellant when it repeatedly permitted the introduction of hearsay testimony from children services workers, from Valerie Copeland, from Michelle Sanders, from Tashana Sanders and Dianne Russon[.]
 {¶ 7} "[3.] The Appellant was denied due process and a fair trial when the Prosecutor engaged in misconduct at trial, which misconduct substantially prejudiced and misled the jury.
 {¶ 8} "[4.] The Appellant was denied his constitutional right to effective assistance of counsel when his attorney failed to protect appellant's rights at trial.
 {¶ 9} "[5.] The trial court erred when it failed to grant the Appellant's motion for acquittal at the close of the state's case as the evidence was insufficient to sustain a conviction."
 {¶ 10} Because we find appellant's fourth assignment of error to be dispositive of this appeal, we will consider it first. Under this assignment of error, appellant argues that he was denied his constitutional right to effective assistance of counsel because, among other things, his trial attorneys failed to call Dr. Wilfred B. Dodgson ("Dr. Dodgson") as a witness.
 {¶ 11} The standard for determining whether or not a criminal defendant has been afforded his right to effective assistance is well-settled in Ohio. To be successful on such a claim, a criminal defendant must meet the two-pronged test originally articulated by the United States Supreme Court in Strickland v. Washington (1984),466 U.S. 668, and subsequently adopted by the Supreme Court of Ohio inState v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. See, also, State v. Swick, 11th Dist. No. 97-L-254, 2001-Ohio-8831, 2001 Ohio App. LEXIS 5857, at 4.
 {¶ 12} First, a defendant must be able to show that his trial counsel was deficient in some aspect of his representation. Bradley at 141. This requires a showing that trial counsel made errors so serious that, in effect, the attorney was not functioning as the "counsel" guaranteed by both the United States and Ohio Constitutions. Id.
 {¶ 13} Second, a defendant must be able to show that the deficient performance prejudiced his defense. Id. at 142. This requires a showing that there is "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 142.
 {¶ 14} There is a strong presumption in Ohio that a licensed attorney is competent. State v. Smith (1985), 17 Ohio St.3d 98, 100. Accordingly, to overcome this presumption, a defendant must show that the actions of his attorney did not fall within a range of reasonable assistance. State v. Smith (Dec. 22, 2000), 11th Dist. Nos. 99-P-0039 and 99-P-0040, 2000 Ohio App. LEXIS 6115, at 18.
 {¶ 15} Debatable strategic and tactical decisions will not form the basis of a claim for ineffective assistance of counsel, even if there had been a better strategy available. State v. Phillips, 74 Ohio St.3d 72,85, 1995-Ohio-171. In other words, errors of judgment regarding tactical matters do not substantiate a defendant's claim of ineffective assistance of counsel. Swick at 4.
 {¶ 16} More specific to this case, the decision of whether to call a particular witness falls within the scope of trial strategy and tactics, and is generally left to the sound discretion of trial counsel.Smith, 2000 Ohio App. LEXIS 6115, at 18. As a result, courts have traditionally been reluctant to find ineffective assistance in those cases where an attorney fails to call a particular witness. State v.Otte, 74 Ohio St.3d 555, 1996-Ohio-108.
 {¶ 17} Dr. Dodgson, whom the state called as a witness during appellant's first trial, examined the victim on February 12, 1998, after receiving a request from the Trumbull County Children Services Board concerning alleged sexual abuse. From his examination, Dr. Dodgson determined that, although there was no evidence of sexual abuse, the physical findings were inconclusive. Dr. Dodgson based his opinion on the length of time between the alleged incident and his examination, the allegations as given by the victim and her family, and the physical development of the child.
 {¶ 18} With respect to appellant's second trial, the state included Dr. Dodgson on its witness list, but neither called the doctor to testify, nor introduced his written report into the record. Similarly, appellant's trial attorneys also failed to call the doctor as a witness, and when they attempted to introduce Dr. Dodgson's written report at the conclusion of the proceedings, the court denied this request because appellant's attorneys had not laid a proper foundation for its admission during the course of trial.
 {¶ 19} Accordingly, the second jury was not presented with the above testimony concerning the absence of physical evidence indicating abuse. Appellant now argues that his attorneys' failure to somehow introduce this evidence into the record not only constituted deficient performance, but it also prejudiced his defense. We agree.
 {¶ 20} At his second trial, appellant's theory of the case was that the alleged rape never took place. Appellant's attorneys, even though never calling their own witnesses, attempted to support this theory by cross-examining those witnesses presented by the state. In particular, they tried to discredit the victim's story by pointing out and emphasizing the inconsistencies between what she had told other people prior to trial and her sworn testimony.
 {¶ 21} For whatever reason, however, appellant's attorneys did not call Dr. Dodgson to testify. In the context of this trial, where the only evidence of rape was the victim's testimony, expert opinion concerning the absence of physical findings showing sexual abuse was vitally important to an effective defense. Thus, we conclude that appellant's attorneys rendered ineffective assistance by not calling Dr. Dodgson.
 {¶ 22} This is not a situation where an attorney chose not to call his own expert and, instead, relied on cross-examination to discredit the state's case. State v. Hartman, 93 Ohio St.3d 274, 299, 2001-Ohio-1580
(holding that such conduct does not constitute ineffective assistance of counsel because it is a "legitimate `tactical decision'"). See, also,State v. Madrigal, 87 Ohio St.3d 378, 390, 2000-Ohio-448; State v.Nicholas (1993), 66 Ohio St.3d 431, 436. Rather, this case is similar to our decision in State v. Brant (Aug. 4 2000), 11th Dist. No. 99-P-0037, 2000 WL 1114845, at 9, wherein this court held that the defendant's attorney was ineffective for failing to call an available expert witness who would have testified that the physical evidence in that case did not indicate forced sexual penetration.
 {¶ 23} In Brant, because the defendant admitted to having sex with the alleged victim, the key issue at trial was whether the sex was consensual. To prove force, the state presented the testimony of the alleged victim and a nurse who told the jury that, based on her expert opinion, the evidence established that there was forced penetration, which was obviously inconsistent with consent. Although aware of a contrary opinion from a doctor who had reviewed the reports before trial, the defendant's trial attorney chose not to call the doctor as a witness because he believed the nurse's testimony would not "concern the jury" as the defendant admitted he and the victim had intercourse on the night in question. In holding that counsel's failure to call an available expert in rebuttal fell below an objective standard of reasonable representation, we concluded that if the defendant's attorney had presented such evidence, there was a reasonable probability that the trial would have resulted in a different outcome. Brant at 10.
 {¶ 24} The same is true in the case at bar. To prove appellant's guilt the state presented the testimony of several witnesses, most important of which was the victim. While appellant's attorneys attempted to discredit her through cross-examination, they failed to utilize a very important piece of evidence; namely, the medical findings revealing no indications of sexual abuse. Furthermore, even though Dr. Dodgson testified in the first trial that negative findings were not out of the ordinary in cases involving girls the same age as the victim, the jury should have been presented with this information so that it, as the trier of fact, could assess the credibility of the other evidence.
 {¶ 25} Dr. Dodgson's report also raised other questions that may have been relevant to appellant's defense. For example, Dr. Dodgson stated that the victim told him that the rape occurred when "[i]t was still warm outside * * * meaning during the summer/early fall." This clearly contradicts the state's claim that the rape occurred sometime in January or February 1997.
 {¶ 26} Also, it appears from the report that the victim's aunt told Dr. Dodgson she had noticed an "unusual amount of vaginal discharge in [the victim's] panties" over the preceding several months. Taken into consideration with the victim's remark to Dr. Dodgson that "it hurts occasionally when she pees[,]" a question could have been raised in the minds of the jurors that the victim recently had been sexually assaulted rather than, as the state maintains, nearly a year before the examination.
 {¶ 27} We recognize that it is sometimes difficult to show on direct appeal what a potential witnesses' testimony would have been if he or she had been called to testify, and that resolving such issues in the defendant's favor "would be purely speculative." Hartman at 299; See, also, Madrigal at 390. In this case, however, Dr. Dodgson testified at appellant's first trial. Thus, appellant's attorneys should have been aware of Dr. Dodgson's prior testimony. In fact, the record clearly shows that they were at least aware of his written report because they unsuccessfully attempted to introduce it into the record.
 {¶ 28} There is also nothing in the record suggesting that Dr. Dodgson was unavailable to testify at appellant's second trial. Even if that were true, Evid.R. 804(B)(1) permits former testimony to be introduced at subsequent proceedings if the person who testified is later unavailable.[1]
 {¶ 29} Simply stated, the failure to call Dr. Dodgson fell below an objective standard of reasonable representation. Moreover, without stating an opinion on appellant's guilt or innocence, we conclude that, based on the totality of the evidence before the jury, this failure was prejudicial to appellant's defense, as there is "reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley at 142. As was the case in Brant, supra, the testimony of a defense expert addressing the lack of physical evidence indicating sexual abuse, in addition to other relevant issues, could have certainly created the possibility of reasonable doubt with respect to appellant's guilt. Appellant's fourth assignment of error has merit.
 {¶ 30} In light of our reversal on appellant's fourth assignment of error, we do not reach the issues raised under appellant's first, second, and third assignments of error, as any analysis with respect to those assignments would be moot. App.R. 12(A)(1)(c). However, we will address appellant's fifth assignment of error, in which he argues that the trial court should have granted his Crim.R. 29 motion for acquittal, because "`if we sustain that claim, the state will be barred from retrying [appellant].'" State v. Willard (2001), 144 Ohio App.3d 767,777, quoting State v. Freeman (2000), 138 Ohio App.3d 408, 424.
 {¶ 31} Under Crim.R. 29, a trial court "shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman
(1978), 55 Ohio St.2d 261, syllabus. Accordingly, a motion for judgment of acquittal pursuant to Crim.R. 29 should be granted only where the evidence is insufficient to sustain a conviction. State v. Apanovitch
(1987), 33 Ohio St.3d 19, 23.
 {¶ 32} In reviewing a denial of a motion for acquittal, an appellate court must apply the same standard as if it were considering a challenge to the sufficiency of the evidence. When assessing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jacksonv. Virginia (1979), 443 U.S. 307.
 {¶ 33} To convict appellant of rape, the state had to prove that he engaged in sexual conduct with a child under the age of thirteen by purposely compelling submission by force or threat of force. R.C.2907.02(A)(1)(b)(2). Sexual conduct is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 34} Appellant argues that the state did not provide any physical evidence of penetration. Accordingly, he submits that the state failed to prove an essential element of the crime.
 {¶ 35} We disagree because penetration may also be proven through the testimony of the alleged victim. Here, the victim in this case testified that appellant ordered her and her little brother into a bedroom where he instructed the victim to "pull down [her] pants and lay on the bed." Appellant then climbed on top of the victim, "put his penis inside of [her] private[,]" and left.
 {¶ 36} The victim's testimony, if believed, was sufficient to convict appellant of the charged crime. When prosecuting an offender for rape, the state is not required to provide physical evidence of penetration. Rather, all the state must do is establish, beyond a reasonable doubt, that sexual conduct occurred. This may be accomplished through either physical evidence and/or witness testimony.
 {¶ 37} Moreover, even if there were inconsistencies in the testimony, the jury, as the trier of fact, was obligated to assess the credibility of each witness before making its decision. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. This court will not disturb those findings on appeal. State v. Ready (2001),143 Ohio App.3d 748. Appellant's fifth assignment of error has no merit.
 {¶ 38} Although this court is not specifically addressing appellant's first, second, and third assignments of error, we do note that we have serious concerns about those assignments. In cases such as this one where there is no physical evidence to link the defendant to the crime, the prosecution has a duty to avoid prejudicing the jury through the introduction of hearsay or other inadmissible evidence. If the state has doubts about the weight or sufficiency of its evidence, perhaps the prosecutor should re-evaluate the state's position.
 {¶ 39} For our criminal justice system to be successful, a jury's verdict should reflect the quality of the presented evidence. A verdict should never be based on any impermissible emotional trappings or embellishments supplied by the prosecutor.
 {¶ 40} Based on the foregoing analysis, the judgment of the trial is reversed, and the matter is remanded for further proceedings consistent with this opinion.
WILLIAM M. O'NEILL, P.J., DONALD R. FORD, J., JUDITH A. CHRISTLEY, J. concur.
[1] Evid.R. 804(B)(1) provides that the following will not be excluded as hearsay if the declarant is unavailable as a witness: "[t]estimony given as a witness at another hearing of the same or a different proceeding * * * if the party against whom the testimony is now offered * * * had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."